No. 24-4168

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Alexandria Heather and Kelsey Nelson,

*Plaintiffs–Appellants,*

v.

Healthline Media, Inc.,

*Defendant–Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:22-cv-05059-JD
Hon. James Donato

## APPELLANTS' REPLY BRIEF

Adam E. Polk
Simon S. Grille
Trevor T. Tan
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com

*Attorneys for Plaintiffs–Appellants,*
*Alexandria Heather and Kelsey Nelson*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................3

I.    The Plain Text of the VPPA Does Not Limit "Consumers" to Those Who Subscribe to a Defendant's Audiovisual Goods or Services. ...............3

    A.    The Second Circuit's Decision in *Salazar* Supports Plaintiffs' Arguments for Reversal. ..........................................................3

    B.    This Court Should Reject Healthline's Arguments for Disregarding the Text of Section 2710(a)(1). .....................................4

        1.    Healthline's Context Argument is Fundamentally Flawed. ....................................................................5

        2.    Plaintiffs' Interpretation of "Consumer" is Consistent with the VPPA's Purpose of Broadly Protecting Americans' Video Privacy Rights and its Legislative History ..............................................................14

        3.    Healthline's Policy Concerns Are Unfounded. ......................18

II.    Plaintiffs Are Healthline's Subscribers Because They Provided Valuable Information in Exchange for Its Goods or Services. ...................20

III.    There is No Independent Basis for Affirming the Judgment. ......................22

CONCLUSION .................................................................................28

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Am.'s Test Kitchen, LP,*
  680 F. Supp. 3d 31 (D. Mass. 2023) ...................................................26

*Ali v. Fed. Bureau of Prisons,*
  552 U.S. 214 (2008) ...................................................................15

*Austin-Spearman v. AMC Network Ent. LLC,*
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) ...................................................26

*Azar v. Allina Health Servs.,*
  587 U.S. 566 (2019) ...................................................................18

*Barr v. United States,*
  324 U.S. 83 (1945) ....................................................................11

*BedRoc Ltd., LLC v. United States,*
  541 U.S. 176 (2004) ....................................................................5

*Belozerov v. Gannett Co.,*
  646 F. Supp. 3d 310 (D. Mass. 2022) ..................................................24

*Bostock v. Clayton Cnty., Georgia,*
  590 U.S. 644 (2020) ...................................................................10

*Brooker v. Desert Hosp. Corp.,*
  947 F.2d 412 (9th Cir. 1991) ..........................................................20

*California River Watch v. City of Vacaville,*
  39 F.4th 624 (9th Cir. 2022) ....................................................... 13, 14

*Carroll v. Gen. Mills, Inc.,*
  2023 WL 6373868 (C.D. Cal. Sept. 1, 2023) .........................................10

*Carter v. Scripps Networks, LLC,*
  670 F. Supp. 3d 90 (S.D.N.Y. 2023)................................................6, 22

*Cheneau v. Garland,*
  997 F.3d 916 (9th Cir. 2021).............................................................7

*Cir. City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) ...................................................................18

*City of Chicago, Illinois v. Fulton,*
  592 U.S. 154 (2021) .....................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024)..................................................24

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992)..................................................................................6

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017).................................................. 11, 26, 27

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .............................................. 4, 20, 21

*Feldman v. Star Trib. Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023).................................................24

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023)..................................................24

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)...................................................28

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) .......................................... 25, 26

*Hillman v. Maretta*,
569 U.S. 483 (2013)................................................................................12

*In re Atossa Genetics Inc Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017)..................................................................23

*In re Catapult Ent., Inc.*,
165 F.3d 747 (9th Cir. 1999).......................................................... 18, 20

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................................................................26

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)......................................25

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005)..............................................................................6, 7

*Kuzenski v. Uproxx LLC*,
2023 WL 8251590 (C.D. Cal. Nov. 27, 2023)............................... 10, 22

iii

## TABLE OF AUTHORITIES
### (continued)

Page

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004).......................................................................... 12, 14

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022)...........................................26

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023)...........................................24

*McMahon v. Take-Two Interactive Software, Inc.*,
640 F. App'x 669 (9th Cir. 2016) ....................................................23

*Mendoza v. Caesars Ent., Inc.*,
2024 WL 2316544 (D.N.J. May 22, 2024)................................. 10, 25

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .........................................................14

*Morales v. City of Los Angeles*,
214 F.3d 1151 (9th Cir. 2000) .........................................................23

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
615 F.3d 1106 (9th Cir. 2010) .........................................................11

*Olympic Forest Coal. v. Coast Seafoods Co.*,
884 F.3d 901 (9th Cir. 2018).............................................................15

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*,
693 F.3d 1084 (9th Cir. 2012) ...........................................................8

*Paulson, United States v. Paulson*,
68 F.4th 528 (9th Cir. 2023) ..............................................................18

*Pennsylvania Dep't of Corr. v. Yeskey*,
524 U.S. 206 (1998)............................................................................16

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
2024 WL 324121 (D.D.C. Jan. 29, 2024)........................................10

*Romag Fasteners, Inc v. Fossil, Inc.*,
590 U.S. 212 (2020).........................................................................6, 8

*Russello v. United States*,
464 U.S. 16 (1983)...............................................................................8

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Salazar v. Nat'l Basketball Ass'n*,
685 F. Supp. 3d 232 (S.D.N.Y. 2023)................................................22

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024)...................... 1, 4, 6, 7, 9, 10, 11, 12, 15, 17, 19, 21

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) .................................................24

*Sellers v. Bleacher Rep., Inc.*,
2023 WL 4850180 (N.D. Cal. July 28, 2023)....................................24

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ..............................................28

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023)..............................................10

*Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop. Located in Maricopa Cnty.*,
627 F.3d 1268 (9th Cir. 2010) ...........................................................20

*United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*,
837 F.3d 1055 (9th Cir. 2016) ...............................................................8

*United States v. Albertini*,
472 U.S. 675 (1985)..............................................................................5

*United States v. Chhun*,
744 F.3d 1110 (9th Cir. 2014) ...........................................................10

*United States v. LKAV*,
712 F.3d 436 (9th Cir. 2013)..............................................................12

*United States v. Lucero*,
989 F.3d 1088 (9th Cir. 2021) ...........................................................12

*United States v. Monsanto*,
491 U.S. 600 (1989)..............................................................................5

*United States v. Naftalin*,
441 U.S. 768 (1979)...........................................................................5, 9

*United States v. Neal*,
776 F.3d 645 (9th Cir. 2015)................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Price*,
   980 F.3d 1211 (9th Cir. 2019) ...........................................................27

*United States v. Tan*,
   16 F.4th 1346 (9th Cir. 2021) ................................................... 8, 9, 14

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ...........................................................24

*Whalen v. Roe*,
   429 U.S. 589 (1977) ...........................................................................28

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ................................................... 4, 11, 21

**Statutes**

18 U.S.C. § 2710(a)(1) ............................................................... 1, 5, 11

18 U.S.C. § 2710(a)(3) .......................................................................24

42 U.S.C. § 6972(a)(1)(B) .................................................................13

**Other Authorities**

134 Cong. Rec. S5397-01 ..................................................................16

S. Rep. 100-599 (1988) .................................................. 15, 16, 17, 28

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................24

## INTRODUCTION

The main issue in this appeal is whether the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710(a)(1), requires a "consumer" to subscribe to a defendant's audiovisual goods or services. The Second Circuit recently addressed this question in *Salazar v. National Basketball Association*, 118 F.4th 533 (2d Cir. 2024). Citing the plain language, structure, and purpose of the VPPA, the *Salazar* court held that it does not, rejecting many of the same arguments Healthline makes here. The court also held that signing up for a newsletter constitutes a subscription to a good or service where, as Plaintiffs did here, the plaintiff provides "valuable personal information" to the defendant. *Id.* at 552. *Salazar*'s analysis is consistent with the Supreme Court and the Ninth Circuit's prescriptions regarding statutory interpretation, and this Court should reach the same conclusion here.

Healthline's arguments for why the Second Circuit got it wrong are unpersuasive. Relying heavily on the analysis of a district court in the Second Circuit that *Salazar* implicitly rejected, Healthline argues that this Court should construe "goods or services" in section 2710(a)(1) to mean "video goods or services" because *other* parts of the VPPA contain an explicit audiovisual requirement. This argument turns statutory interpretation on its head. Under the canon *expressio unius est exclusio alterius*, the fact that Congress explicitly required a video connection in other portions of the VPPA, but deliberately did not

1

do so in defining the scope of who may bring a VPPA claim provides a strong reason to follow the statutory text, not to rewrite it. Healthline's reading also renders the parts of the VPPA containing a video requirement superfluous.

Healthline has not shown why this Court can just ignore two interpretative canons. Despite discussing the legislative history at length, it fails to identify anything that justifies an extreme departure from the VPPA's text. Moreover, allowing those who differentiate themselves from other website visitors through disclosing their personal information to bring a VPPA claim is consistent with the law's protective purpose. Healthline protests that following the plain text would lead to unintended results, but the VPPA is already limited in application—it applies only to video tape service providers, protects only information revealing the videos a consumer requested or obtained, the statute has a knowledge requirement, and businesses can obtain prior consent online to avoid liability. Because there can be no liability without overcoming these hurdles, Congress has already addressed Healthline's scope concerns. In short, Healthline has failed to present a coherent argument as to why, based on the VPPA's text, structure, legislative history, or purpose, this Court should deviate from the plain text of section 2710(a)(1).

Plaintiffs subscribed to Healthline's "goods or services" and are thus "consumers" because they provided their personal information to Healthline in

2

return for access to its newsletter or the Bezzy online health community. Even under Healthline's stricter reading of section 2710(a)(1), Plaintiffs are still subscribers, as registration made the video content relevant to their health interests easier to access, enhancing their experience on Healthline's website.

As an alternative, Healthline asks the Court to affirm because Plaintiffs do not sufficiently allege that it knowingly disclosed their personally identifiable information. The District Court never reached this argument, and there is no reason for this Court to be the first to do so in this case. In any event, Healthline disregards the allegations that it acted deliberately in programming the Pixel to transmit Plaintiffs' protected information. Its effort to impose a heightened pleading requirement for knowledge is again unsupported by the VPPA's text and courts have consistently rejected similar arguments in VPPA cases. As such, there is no independent basis for affirming the judgment.

The Court should reverse the dismissal of Plaintiffs' VPPA claim.

## **ARGUMENT**

### I. **The Plain Text of the VPPA Does Not Limit "Consumers" to Those Who Subscribe to a Defendant's Audiovisual Goods or Services.**

#### A. **The Second Circuit's Decision in *Salazar* Supports Plaintiffs' Arguments for Reversal.**

On October 15, 2024, the Second Circuit issued its opinion in *Salazar*, holding that "nothing in the [VPPA] limits the definition of 'consumer' to those who rent, purchase, or subscribe to a particular class of services—namely,

3

audiovisual content." 118 F.4th at 546. The *Salazar* plaintiff was a Facebook user who signed up for the National Basketball Association's ("NBA") "online newsletter," provided his personal information as consideration, and then watched videos on its website while logged into his Facebook account. *Id.* at 538. The district court granted the NBA's motion to dismiss with prejudice, agreeing that the plaintiff was not a consumer because the online newsletter he signed up for did not constitute an audiovisual good or service for VPPA purposes. *Id.* at 539-40.

Citing "the text, structure, and purpose of the VPPA," the Second Circuit unanimously held that section 2710(a)(1) does not require a subscription to audiovisual content. *Id.* at 545-46. The court also concluded that the plaintiff was a "subscriber" because "he gave the NBA valuable personal information in exchange for access to the online newsletter." *Id.* at 550-53 (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) and *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016)).

## B. This Court Should Reject Healthline's Arguments for Disregarding the Text of Section 2710(a)(1).

Healthline contends the Second Circuit got it wrong in *Salazar,* arguing that: (1) the VPPA's structure supports its interpretation; (2) its construction of section 2710(a)(1) finds support in the legislative history and narrow purpose of the VPPA; and (3) applying the plain language would result in liability beyond what Congress intended. These arguments do not stand up to scrutiny. There is no

4

justification for disregarding the canons of statutory interpretation when nothing in the legislative history or the purpose behind the law warrants it. Liability under the VPPA is already limited to the circumstances that prompted its passage—i.e., the disclosure of private video watching habits by video providers without consent. Because following the plain text does not lead to results directly contrary to Congress's goals in enacting the law, the Court should apply the statute as written.

## 1. Healthline's Context Argument is Fundamentally Flawed.

The problem with Healthline's main argument for why section 2710(a) requires a subscription to its video content is "that Congress did not write the statute that way." *United States v. Monsanto*, 491 U.S. 600, 611 (1989) (quoting *United States v. Naftalin*, 441 U.S. 768, 773 (1979)). A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1). While Healthline invokes the principle of *noscitur a sociis* (Br. at 21-22) to argue that the word "video" should be imported from other provisions of the VPPA, interpretive canons do not give courts license to "rewrite language enacted by the legislature." *Monsanto*, 491 U.S. at 611 (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)). Moreover, the "preeminent canon of statutory interpretation" is to presume that Congress "says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Connecticut Nat. Bank v. Germain*, 503

U.S. 249, 253-54 (1992)). Courts must therefore "avoid" the "temptation" to "read into statutes words that aren't there . . . when Congress has (as here) included the term in question elsewhere in the very same statutory provision." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 215 (2020).

According to Healthline, the structure of the VPPA supports its position because the "definitions of 'video tape service provider,' 'consumer,' and 'personally identifiable information'—have structural and textual symmetry." Br. at 19-20. Healthline points out that "the first decision to address this interpretive question" from a district court in the Second Circuit found that the definition of "consumer" must be "cabined by the definition of 'video tape service provider[.]'" *Id.* at 20 (quoting *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 98-99 (S.D.N.Y. 2023)). But Healthline does not acknowledge that *Salazar* rejected the "parallelism" argument the *Carter* court accepted, explaining that "Congress chose to *deviate* from any parallelism by using the terms 'goods or services' in the 'consumer' definition and 'prerecorded video cassette tapes or similar audio-visual materials' in the 'video tape service provider' definition. Again, Congress's decision to use different words in different definitions strongly signals its intent to convey different meanings." *Salazar*, 118 F.4th at 548 (citing *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005)) (emphasis in original).

Healthline focuses on the definition of "video tape service provider," but its structural argument falters because even with the inclusion of the word "video" in that definition, it is "not limited to entities that deal *exclusively* in audiovisual content; rather, audiovisual content need only be *part* of the provider's book of business." *Salazar*, 118 F.4th at 548 (emphases in original). Since the word "video" does not connote an exclusively video focus when used elsewhere in the VPPA, "it makes sense that 'consumer' should be understood to encompass a renter, purchaser, or subscriber of *any* of the provider's 'goods or services'—audiovisual or not." *Id.* at 549 (emphasis in original).

Declining to read a "video" requirement where the word does not appear is not, as Healthline claims, "a piecemeal interpretation of the VPPA[.]" Br. at 3. "When interpreting a statute, [courts] are guided by the fundamental canons of statutory construction and begin with the statutory text." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015). While interpretive canons are not absolute, Healthline makes no effort to explain why this Court should just ignore the canon *expressio unius est exclusio alterius*, even though the "presumption applies with even greater force here, where Congress used particular language in one provision and not in another provision of the same subsection of the same statute." *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021); *see Jama*, 543 U.S. at 341 (courts should have "even greater" reluctance to read a word that Congress did not include

"when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Both the Supreme Court and the Ninth Circuit have repeatedly rebuffed attempts to impose a requirement that appears elsewhere in a statute when Congress did not include the requirement in the section at issue.  In *Russello v. United States*, for example, the Supreme Court rejected the narrower construction because the "less expansive language" appeared in other sections and "[h]ad Congress intended to restrict" in the same manner, "it presumably would have done so expressly as it did in the" other sections.  464 U.S. 16, 23 (1983).  More recently in *Romag Fasteners*, the Supreme Court refused to read a willfulness requirement into a section of the Lanham Act when "[a] wider look at the statute's structure" undercuts the argument because "[t]he Lanham Act speaks often and expressly about mental states" and so "[t]he absence of any such standard in the provision before us, thus, seems all the more telling."  590 U.S. at 215-16.  In *United States v. Tan*, a Ninth Circuit panel declined to read an additional requirement into a section of a statute because it "[w]ould ignore the different wording of the two related provisions."  16 F.4th 1346, 1350 (9th Cir. 2021).[1]

---

[1] *See also, e.g.. United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055, 1062-63 (9th Cir. 2016) (declining to read the word "federal" into a statute); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1095 (9th Cir. 2012) (adopting reading that did not require inserting either the word "only" or "solely" into subsection).

Hence the context and structure of the VPPA is a compelling reason to follow section 2710(a)(1)'s text, not to disregard it, because "[t]his textual divergence" in defining "consumer" shows that Congress intended a broader meaning for the word. *Salazar*, 118 F.4th at 547-48; *see United States v. Naftalin*, 441 U.S. 768, 773 (1979) (that "Congress did not write the statute that way" was "strong affirmative evidence" of a different intent).

The flawed contextual argument Healthline advances should also be rejected because it violates the canon against surplusage, which "is strongest when an interpretation would render superfluous another part of the same statutory scheme." *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 159 (2021) (citation omitted). If, as Healthline claims, "'goods or services' are, by definition, audiovisual materials, then Congress's express restriction in the definition of 'personally identifiable information' to information about '*video* materials or services' would be superfluous." *Salazar*, 118 F.4th at 548 (emphasis in original); *see also Tan*, 16 F.4th at 1350 (rejecting proposed interpretation that also suffered from rendering other statutory language surplusage).

Healthline does not provide this Court with a convincing reason why these key canons should yield to its preferred reading when the canons are at their

9

strongest in this case.[2]  It contends that the scope of section 2710(a)(1) must be

limited to the "video store context" of the late 1980s because Congress could not

have envisioned the type of subscriber relationships in today's internet age.  Br. at

22.  This is not a reason to rewrite the VPPA.  "Where an unambiguous statutory

text exists, it is irrelevant whether Congress did not envision the application in

question." *United States v. Chhun*, 744 F.3d 1110, 1116 (9th Cir. 2014); *see*

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 673-74 (2020) (reiterating

principle).  Section 2710(a)(1) is clear: it does not require a subscription to video

goods or services.  It makes no difference whether Healthline's relationship with

Plaintiffs is closely analogous to the relationship between a video rental store and a

customer in the 1980s (Br. at 36-37) because "the VPPA is no dinosaur statute.

Congress deployed broad language in defining the term 'consumer,' showing it did

not intend for the VPPA to gather dust next to our VHS tapes." *Salazar*, 118 F.4th

---

[2] For similar reasons, Healthline's invocation of various district court cases to
characterize *Salazar* as an outlier is unpersuasive.  Br. at 3, 19 n.1, 24.  The vast
majority of the district courts simply cited *Carter* without performing their own
analysis or attempting to reconcile the tension between its contextual analysis and
the canons of interpretation.  *See, e.g.*, *Carroll v. Gen. Mills, Inc.*, 2023 WL
6373868, at *4 (C.D. Cal. Sept. 1, 2023); *Kuzenski v. Uproxx LLC*, 2023 WL
8251590, at *5 (C.D. Cal. Nov. 27, 2023); *Tawam v. Feld Ent. Inc.*, 684 F. Supp.
3d 1056, 1062 (S.D. Cal. 2023); *Mendoza v. Caesars Ent., Inc.*, 2024 WL
2316544, at *5-6 (D.N.J. May 22, 2024); *Pileggi v. Washington Newspaper Publ'g
Co., LLC*, 2024 WL 324121, at *9 (D.D.C. Jan. 29, 2024).

at 553; *see also Yershov*, 820 F.3d at 488; *Barr v. United States*, 324 U.S. 83, 90 (1945).

Healthline claims this Court's decision in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) supports its position, but that court was simply interpreting the scope of "personally identifiable information." *Id.* at 985. Yet that court recognized that the VPPA is not limited to only situations closely analogous to video tape rentals from the late 1980s, stating that while the device serial number at issue there was "too attenuated" to be personally identifying, "modern technology may indeed alter—or may already have altered—what qualifies under" the VPPA and observing that "[a] Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual." *Id.* at 986.

Like the defendant in *Salazar*, Healthline also makes much of the fact that the title of the VPPA's liability section states "Video tape rental and sale records." 18 U.S.C. § 2710(b). Healthline acknowledges that *Salazar* rejected the same argument but claims the Second Circuit ignored "the obvious connection between the title of that provision and the definition of 'consumer.'" Br. at 23. The Second Circuit's recognition that the "headings and titles in statutes cannot limit the plain meaning of the text" is consistent with this circuit's approach. 118 F.4th at 548 (citation omitted); *see Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1120 (9th Cir. 2010); *see also United States v. LKAV*, 712 F.3d 436, 442 (9th

Cir. 2013) (heading could not be used as support for "textual argument"). *Salazar* also correctly concluded that the title of the liability provision reveals little about the scope of the word "consumer" since it is the definition of "personally identifiable information" that primarily limits a provider's liability. 118 F.4th at 548. That makes sense because the definition of "consumer" contemplates renters, purchasers, *and subscribers* while the title of the liability provision focuses only on rentals and sales, suggesting that the range of users protected under the VPPA is not limited to those who buy or rent audiovisual materials.

None of the cases Healthline cites supports its statutory rewrite. It largely attempts to brush off the divergence between section 2710(a)(1) and other parts of the VPPA as "minor wording differences" and claims that the interpretive canons should not be applied because the VPPA was poorly drafted. Br. at 41-42. Yet unlike in the cases it cites, there is no "unqualified directive" from Congress in the VPPA's legislative history or elsewhere in the statute that "consumer" should be limited to those who sign up for a service provider's video content. *Hillman v. Maretta*, 569 U.S. 483, 494 n. 3 (2013). Further, even if the VPPA contains "mismatched" provisions, Plaintiffs' interpretation of section 2710(a)(1) is consistent with the purpose behind the VPPA, so there is no justification for disregarding what Congress enacted. *United States v. Lucero*, 989 F.3d 1088, 1097 (9th Cir. 2021); *see Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts cannot

12

read absent word into statute even it may have been omitted "by inadvertence" if there is a "nonasbsurd meaning in view").

Healthline primarily relies on *California River Watch v. City of Vacaville*, 39 F.4th 624 (9th Cir. 2022), a case involving the Resource Conservation and Recovery Act ("RCRA"), but that decision does not aid its reading of "consumer." Br. at 33-34. There, an environmental group sued the City of Vacaville accusing it of violating 42 U.S.C. § 6972(a)(1)(B) by transporting dangerous solid waste when a human carcinogen had seeped into the city's water supply. *Id.* at 627. The question was whether the word "transportation" in that section encompassed the City's movement of waste by pumping it through the water supply or was limited to "a direct connection to the waste disposal process—not coincidental movement of the waste[.]" *Id.* at 630.

Although the *California River Watch* court adopted the narrower reading of "transportation," it did not rewrite the statute by adding a limiting word as Healthline is asking this Court to do. Instead, that court concluded the context of the RCRA supported the narrower reading because Congress used a "more nuanced meaning of transportation" throughout the statute, strongly suggesting that it intended the same meaning to apply in the section at issue. *Id.* at 630-632 (noting, for instance, provisions suggesting transportation is limited to "the active movement of waste as part of the waste disposal process."). Unlike *California*

13

*River Watch*, Congress did not repeatedly use "goods or services" throughout the VPPA to mean "video goods or services." This case also implicates interpretative canons that were not present in *California River Watch*. For instance, while a broader reading of "transportation" would render other provisions of the RCRA and its implementing regulations, such as manifest and permitting requirements, "unworkable," Healthline's interpretation here would render parts of the VPPA surplusage. *Id.* at 631.

Healthline's context argument cannot overcome the fact that Congress deliberately defined "consumer" without a video requirement in contrast to other parts of the VPPA. This Court should "give effect to" this "textual difference" and apply the text of section 2710(a)(1) as written. *Tan*, 16 F.4th at 1350; *see Lamie*, 540 U.S. at 538 (declining to "read an absent word into the statute").

      **2.**      **<u>Plaintiffs' Interpretation of "Consumer" is Consistent with the VPPA's Purpose of Broadly Protecting Americans' Video Privacy Rights and its Legislative History.</u>**

Healthline claims a stricter interpretation of "consumer" is in line with the VPPA's narrow purpose (Br. at 17), but the Ninth Circuit has recognized that "[c]onsistent with Congress's purpose" of protecting Americans' privacy interests in the videos they watch, "the statute's language is broad." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). The Second Circuit similarly observed that the VPPA's provisions are extensive, noting that the use of the word "any" in

14

defining "consumer" suggests a more sweeping intent because that word has traditionally been given an "expansive meaning." *Salazar*, 118 F.4th at 546 (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008)); *see also Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 906 (9th Cir. 2018). In defining the content providers subject to the VPPA, Congress also "cast a wide net" "to ensure that businesses dealing in audiovisual goods or services satisfy the definition even if they *also* deal in non-audiovisual goods or services." *Salazar*, 118 F.4th at 548 (emphasis in original).

Congress's choice to use broad language in the VPPA directly undermines Healthline's contention that a natural reading of section 2710(a) leads to the conclusion that "one is a . . . 'subscriber' under the VPPA only if what one . . . subscribes to is the same sort of thing that a person in 1988 ordinarily and commonly rented from a video store—i.e., videos." Br. at 22; *see also id.* at 40-41 (claiming that because the definition of "consumer" incorporates the definition of "video tape service provider" there was no need for Congress to require a video connection in section 2710(a)(1)). That conclusion does not follow when even the scope of the provisions that *do* use the word "video" are not exclusively limited to videos. *See Salazar*, 118 F.4th at 548-49; *see also* S. Rep. 100-599 at 12 (1988)

15

(department store would still potentially be subject to the VPPA notwithstanding that it sells more than just video tapes).[3]

Healthline suggests the omission of the word "video" or "audiovisual" before "goods or services" in section 2710(a)(1) is just a quirk of the VPPA's history, pointing out that the VPPA was originally meant to cover libraries as well. Br. at 42-47. The earlier draft of the law, however, still defined "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Br. at 43-44 (citing 134 Cong. Rec. S5397-01). Healthline claims that after the provisions covering libraries were removed, Congress tweaked the definition of "personally identifiable information" to add the word "video" before "materials" to clarify that the law only covers video materials, not to create a

---

[3] Healthline contends that there can be no liability unless a defendant learns "whether the VPPA applies and what she and the store must do to stay in compliance" at the point of the transaction with the consumer. Br. at 37. This position once again finds no support in the actual text or legislative history of the statute. The Senate Report emphasizes that protected information under the VPPA "is intended to be transaction-oriented" because details of the transaction would likely reveal that an individual viewed or requested particular video content. S. Rep. 100-599 at 12. That says nothing about who can bring a VPPA claim. Healthline once again points to the differences from "1988 in comparison to today's digital world" (Br. at 37-38) but that does not help its argument either because "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quotation marks and citation omitted).

difference in meaning between "consumer" and "personally identifiable information."  Br. at 44-45.  The cited portion of the Senate Report does not support Healthline's assertion.  It only discusses the definition of "personally identifiable information" and how that definition limits the scope of the VPPA. *See Salazar*, 118 F.4th at 549 & n.10.  Nor does the section "make clear" (Br. at 45) that in revising the VPPA before its enactment, Congress intended to limit the definition of "consumer" to subscribers of audiovisual content.

Further overreading the Senate Report, Healthline claims that Congress used the word "services" to mean video services.  Br. at 45-46 (citing S. Rep. 100-599 at 8).  The statement it cites—"receiving services from video tape service providers"—says nothing about the scope of "consumer" and, again, the Senate Report itself makes clear that the usage of the "video" does not mean exclusively video materials.  *Salazar*, 118 F.4th at 549; S. Rep. 100-599 at 12.  Healthline also claims the report somehow shows the VPPA "was only intended to cover 'those transactions involving the *purchase* of video tapes and not other products," even though this portion of the report is discussing one hypothetical example of "a department store that *sells* video tapes[.]"  Br. at 46-47 (quoting S. Rep. 100-599 at 12) (second emphasis added).

Healthline's examination of the VPPA's legislative history is futile because nothing shows that Congress intended the definition of "consumer" to incorporate

17

an audiovisual requirement. *See Cir. City Stores, Inc. v. Adam*s, 532 U.S. 105, 119 (2001) (stating there was no need to consult the legislative history when the statutory text was clear, and noting that in any case, it was "quite sparse"). As such, there is no basis for departing from the plain language. *See In re Catapult Ent., Inc.*, 165 F.3d 747, 753 (9th Cir. 1999) (legislative history can only overcome the plain language when it "clearly indicates that Congress meant something other than what it said.").

### 3. Healthline's Policy Concerns Are Unfounded.

Raising the specter of sweeping liability, Healthline claims that Plaintiffs' interpretation of "consumer" would "subject wide swaths of companies that host but do not sell, rent, or offer subscriptions to online video content to new and unexpected liability." Br. at 2, 36-38. Following the plain text would not lead to liability beyond the VPPA's protective purpose. *See Paulson, United States v. Paulson*, 68 F.4th 528, 545 (9th Cir. 2023) (courts will not rewrite a statute if the result is not absurd). Concerns about the scope of a law should also be directed towards Congress, not the courts. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 581 (2019).

Like the NBA did in *Salazar*, Healthline posits a hypothetical situation of a person who buys a hammer at a store and then later watches a video on a website, claiming that Congress did not intend for liability under such a scenario. The

18

Second Circuit rejected the NBA's argument as not producing an "anomalous result" because of "the privacy protective goals of the VPPA with respect to individuals' video viewing information." 118 F.4th at 549-50. Healthline's version of the hypothetical also does not make sense. If, as Healthline posits, "no 'video tape rentals or sale records'" are generated at any point of the transaction (Br. at 36-37), then there is no VPPA liability because there would be no "personally identifiable information" (i.e., video-specific-information) being disclosed.

More importantly, Healthline mischaracterizes Plaintiffs' position about the scope of the word "consumer." Plaintiffs' reading does not render the subscription requirement a nullity because a "consumer" would still be limited to those who demonstrate a commitment to a video tape service provider, consistent with the Eleventh Circuit in *Ellis*, the First Circuit in *Yershov*¸ and the Second Circuit in *Salazar*. In the modern context, only those who distinguish themselves from other internet users can bring a VPPA claim, and businesses can readily identify users who have signed up to receive goods or services. Here, Plaintiffs are subscribers because, unlike an anonymous user who happens to watch a video on Healthline's website, they registered and provided something of value. *See Salazar*, 118 F.4th at 552-53 (the plaintiff was a subscriber because he provided his email address, IP address, and "cookies associated with his device"). There is nothing anomalous

19

with holding that those who provide the information necessary for Healthline to carry out its business model as a service provider are protected under the VPPA.

Healthline also overstates the impact on businesses if this Court sides with Plaintiffs, as the definitions of "video tape service provider" and "personally identifiable information" already contain explicit limitations to audiovisual content. The VPPA also limits liability only to those who knowingly disclose protected information, and businesses can obtain consent to disclose from their renters, purchasers, or subscribers. *See Ellis*, 803 F.3d at 1253. Because Congress already wrote the VPPA to ensure that there can be no liability unless the type of information the law was designed to protect has been disclosed, Healthline's concerns are speculative at best.

The VPPA "speaks clearly, and its plain language does not produce a patently absurd result or contravene any clear legislative history," and so the Court should "hold Congress to its words" and apply section 2710(a)(1) as written. *In re Catapult Ent't*, 165 F.3d at 754 (quoting *Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 414-15 (9th Cir. 1991)); *see Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 627 F.3d 1268, 1271 (9th Cir. 2010).

## II. Plaintiffs Are Healthline's Subscribers Because They Provided Valuable Information in Exchange for Its Goods or Services.

Under the plain language of section 2710(a)(1), Plaintiffs are Healthline's subscribers because they furnished their personal information in exchange for

20

Healthline's newsletters or access to its Bezzy community. *See Salazar*, 118 F.4th at 552-53 (the plaintiff was a subscriber because he provided his email address, IP address, and "cookies associated with his device"); *id.* at 550 (the NBA's newsletter was a "qualifying good or service"). As the Second Circuit recognized, sharing personal information "is not insignificant" because it reveals details about the user, and increases the likelihood the user will consume content, "making the NBA's relationship with him distinct from its relationship with casual NBA.com video-watchers who had not signed up for the newsletter." *Id.* at 552.

Healthline concedes that Heather "demonstrated enough of a commitment to Healthline in order to receive an email newsletter" and that Nelson received "access [to] otherwise inaccessible forums and news articles on the Bezzy website." Br. at 28. Concluding that Plaintiffs are subscribers is therefore also consistent with the Eleventh Circuit's decision in *Ellis* and the First Circuit's in *Yershov*. Plaintiffs' act of registering with Healthline shows their commitment under *Ellis*, 803 F.3d at 1257 and the provision of their personal information constitutes valuable "consideration" under *Yershov*, 820 F.3d at 489.

Even if this Court adopts Healthline's narrower interpretation of section 2710(a)(1), Plaintiffs are still its "subscribers" because registration enhanced their viewing of Healthline's videos by making the content relevant to their personal health interests easier to access and consume. ER-42 ¶¶ 69-70, ER–43 ¶¶ 79-80.

Healthline claims that enhanced access is "irrelevant" because "there is no video content on Healthline's website to rent, buy or subscribe to" because its videos are "freely and equally available to any website visitor." Br. at 48-49. This is simply a different framing of the exclusivity requirement the District Court erroneously adopted, which finds no support even in the cases that have adopted the narrower reading of "consumer." *See Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232, 245-46 (S.D.N.Y. 2023) (holding that newsletter subscription was insufficient "given the lack of allegations regarding exclusive content *or enhanced access*.") (citing *Carter*, 670 F.Supp.3d at 98-99) (emphasis added). The other case Healthline cites dismissed the plaintiff's complaint because registration only provided him "with social media type benefits[.]" *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023). The exclusivity requirement has no support in the statutory text or the common understanding of the word "subscriber." This Court should refuse to adopt it.

Plaintiffs are subscribers to Healthline's "goods or services" and are thus "consumers" under the VPPA.

## III. There is No Independent Basis for Affirming the Judgment.

Healthline argues the Court can also affirm on the alternative grounds that Plaintiffs do not sufficiently allege that it "knowingly" disclosed their personally identifiable information to Meta. Br. at 50. The parties briefed this issue in

connection with Healthline's motions to dismiss, but the District Court never reached it. *E.g.*, ER-22. Given that Healthline's arguments raise questions of fact and Plaintiffs never had the chance to amend their knowledge allegations based on any deficiencies the District Court might have identified, there is no reason to decide this issue for the first time on appeal. *See, e.g.*, *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 794 n.2 (9th Cir. 2017) ("[B]ecause the district court did not reach scienter in its order dismissing the amended complaint, we decline to address scienter in the first instance."); *McMahon v. Take-Two Interactive Software, Inc.*, 640 F. App'x 669, 671 (9th Cir. 2016) (similar).

If this Court is willing to consider Healthline's knowledge arguments, it should still reverse because there is no basis to resolve factual disputes and to draw inferences in Healthline's favor. *See Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). Healthline's characterization of this case as one about "unintentional, passive disclosures" (Br. at 54) is directly contrary to Plaintiffs' allegations that Healthline deliberately programmed the Pixel on its website to transmit its users' Facebook IDs ("FID") and the titles of the videos each watched to Meta. ER-38-39 ¶¶ 56-64. Further, the pleading standard Healthline demands finds no support in the VPPA or case law. Instead, "allegations that defendant knowingly installed the Pixel and shared plaintiffs' information is adequate" to establish knowledge. *Markels v. AARP*, 689 F. Supp. 3d 722, 729 (N.D. Cal.

2023).[4]  Plaintiffs' allegations suffice because an FID is personally identifying, as it links to a specific Facebook profile and "[i]t is a unique identifier that is enough, on its own, to identify a person."  *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023) (citation omitted).  The title of the video also reveals that a user "requested or obtained specific video materials or services[.]"  18 U.S.C. § 2710(a)(3).  *See Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 289 (S.D.N.Y. 2024).

Healthline demands Plaintiffs allege more than what is even required to plead fraud, as Federal Rule of Civil Procedure 9(b) provides only that knowledge "may be alleged generally" and the VPPA does not require anything more.  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  Although no circuit court has yet ruled on what is sufficient to plead knowledge for VPPA claims, district courts have repeatedly rejected challenges to similar allegations.  *See, e.g.*, *Sellers*, 2023 WL 4850180, at *5 (allegations that the defendant installed the Pixel to improve its targeted advertising and increase revenue "are enough for the court to reasonably infer that defendant knowingly discloses personally identifying information."); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1022 (D. Minn. 2023) (similar).  The cases Healthline

---

[4] *See, e.g.*, *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023); *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 30-31 (D. Mass. 2024); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314-315 (D. Mass. 2022).

relies on similarly reject the level of detail it demands here. *See, e.g.*, *Mendoza v. Caesars Ent., Inc.*, 2024 WL 2316544, at *5 (D.N.J. May 22, 2024) (plaintiff sufficiently alleged that the defendant "knowingly" disclosed identifying information by pleading that the defendant incorporated the Pixel into the code of its website and used it to transmit user information to Facebook).

Raising a question of fact and disregarding the allegations, Healthline argues that it could not have disclosed Plaintiffs' FIDs because it was not aware of them, blaming the transmission on Facebook (or Meta) because the FID is stored and transmitted by Facebook's "c_user" cookie. Br. at 52-53 (citing *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *4 (N.D. Cal. Apr. 28, 2014)). Healthline cannot rely on *Hulu*, not only because it was decided on a more developed record, but also because the court *denied* summary judgment with respect to Hulu's disclosures to Facebook via the c_user cookie. *Hulu*, 2014 WL 1724344, at *13-17. Consistent with how other courts have construed the VPPA's knowledge requirement, the *Hulu* court explained that "Hulu may not have been able to read Facebook's cookies, but if it knew what they contained and knew that it was transmitting PII . . . then Hulu is liable under the VPPA." *Id.* at *15; *see also Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 (N.D. Ga. 2023) ("If Defendant installed the Facebook pixel knowing it transmits that information, the knowledge element of

25

the VPPA is satisfied."); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1343 (N.D. Ga. 2022) (similar).

Plaintiffs meet the knowledge standard under *Hulu* and other VPPA cases because they are not, as Healthline claims, alleging that it somehow passively or inadvertently "caused" the disclosure of their protected information (Br. at 54), but that it intentionally programmed the Pixel to send such information to Meta. *See* ER-41 ¶¶ 61-62.[5]  While Healthline maintains that it did not know whether the information it revealed via the Pixel "would be identifying as to that visitor" or that a user had a Facebook ID (Br. at 55-56), the VPPA does not have a "subjective" knowledge requirement. *Harris,* 662 F. Supp. 3d at 1337 n.4 ("nothing in [the *Hulu*] test suggests Defendant must have been aware of each individual user's Facebook status"); *see Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) (rejecting similar argument under *Hulu*).

Healthline again cites to *Eichenberger*, which held that under the ordinary person standard, a device serial number does not qualify as "personally identifiable information" when additional information from another party that the defendant never possessed is necessary to identify the user.  876 F.3d at 985-86.  Setting

---

[5] None of the other cases Healthline cites supports its c_user cookie argument. One case simply recounts the plaintiff's allegations.  *See Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015).  The other case is about a different company entirely.  *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 130 (3d Cir. 2015).

aside that *Eichenberger* did not address the "knowingly" requirement of section 2710(b)(1), its underlying reasoning does not assist Healthline's argument because the lawfulness of its disclosures here does not "depend on circumstances outside" of its control, as it deliberately programmed the Pixel with the understanding that it would transmit user FIDs and information about the videos they viewed or requested. 876 F.3d at 985. Nor can the information Healthline allegedly disclosed be considered only "potentially" identifying (Br. at 54-55) when Plaintiffs affirmatively allege that the information identifies both the user and the video content they consumed.

Healthline further argues that the text of section 2710(b)(1) requires a service provider to know both that it is disclosing personally identifiable information and that the user is a "subscriber" and thus a "consumer." Br. at 56-57. This Court need not address this argument since Healthline did not make it in the District Court. *See, generally*, ER-22-25. The argument also has no merit because it can be inferred that Healthline was aware it would be disclosing the information of its subscribers when it chose to program the Pixel to transmit the personal information of all its users.[6] ER-41 ¶¶ 60-64.

---

[6] Interpreting section 2710(b)(1) as requiring a defendant to know both the type of information being disclosed and a user's status as a "consumer" would also be redundant. *See United States v. Price*, 980 F.3d 1211, 1219 (9th Cir. 2019) (even in the criminal context, it is "unnecessary" to read a statute as containing an additional *mens rea* requirement where the statute already had one).

Although Healthline insists that the VPPA requires a provider to know that a specific user "also happens to be a recipient of an emailed newsletter or a registered user of the . . . website," Healthline cites no authority that supports its argument. Br. at 57. In fact, Healthline's own cited cases reject the notion that a plaintiff must establish knowledge "on a visitor-to-visitor basis[.]" *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 161-62 (S.D.N.Y. 2023). This Court should also reject such a requirement because the VPPA is part of a long line of federal privacy statutes responding to concerns about the threat new technologies capable of gathering large amounts of data pose to privacy. *See, e.g.*, S. Rep. 100-599 at 5 (citing *Whalen v. Roe*, 429 U.S. 589, 605 (1977)). Under Healthline's view, however, businesses benefit from using such technologies because, by collecting so much information from many consumers, they would be effectively immunized from the VPPA. This is the type of absurd result that would undermine the fundamental purpose of a statute. *Cf. Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 853 (N.D. Cal. 2022) (rejecting "granular" standard for pleading knowledge because it "would risk undermining the statute entirely").

Plaintiffs adequately plead that Healthline knowingly disclosed their protected information so there is no independent basis for affirming the judgment.

## CONCLUSION

The judgment should be reversed.

Dated: January 6, 2025           Respectfully submitted,

/s/ Trevor T. Tan
Adam E. Polk
Simon S. Grille
Trevor T. Tan
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com

*Attorneys for Plaintiffs–Appellants,*
*Alexandria Heather and Kelsey Nelson*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit, via the appellate CM/ECF system. Case participants who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Trevor T. Tan*
*Trevor T. Tan*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**     24-4168

I am the attorney or self-represented party.

**This brief contains 6,872 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature: /s/ *Trevor T. Tan*_____**          **Date: January 6, 2025**

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                                     *Rev. 12/01/18*